NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251049-U

NO. 4-25-1049

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 25, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* B.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|     Petitioner-Appellee, | ) | No. 22JA289 |
|     v. | ) | |
| Bernard S., | ) | Honorable |
|     Respondent-Appellant). | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's fitness determination was not against the manifest weight of the evidence.

¶ 2    In August 2024, the State filed a petition to terminate the parental rights of respondent, Bernard S., to his minor child, B.S. (born in 2019). B.S.'s mother is not a party to this appeal. In September 2025, the trial court granted the State's petition and terminated respondent's parental rights.

¶ 3    Respondent appeals, arguing the trial court's fitness determination was against the manifest weight of the evidence. He does not challenge the court's best-interest finding. We affirm.

¶ 4    I. BACKGROUND

¶ 5    In June 2022, the State filed a petition to adjudicate B.S. neglected under sections 2-3(1)(a) and 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-

3(1)(a), (b) (West 2022)), alleging B.S. was not receiving the proper care, support, or education and was in an environment injurious to his welfare related to conduct of his mother. At that time, the mother, the minor, and his seven half-siblings were receiving services through an intact case. After various concerns related to the mother's care of the minor and his siblings, the intact case manager requested guardianship be established. In July 2022, the State filed a first amended neglect petition, naming respondent as the putative father and noting he was then in custody at the Winnebago County jail. (Respondent's legal paternity to the minor was established in March 2024.)

¶ 6        In October 2022, the trial court entered an order of continuance under supervision for one year pursuant to section 2-20 of the Juvenile Court Act (705 ILCS 405/2-20 (West 2022)), noting the mother stipulated to the allegation in the amended neglect petition, governed by section 2-3(1)(a), that the minors were not receiving proper care, support, or education. The State dismissed the allegations governed by section 2-3(1)(b), relating to an injurious environment. Respondent had no objection.

¶ 7        In June 2023, the trial court vacated the continuance under supervision order based on various concerns unrelated to respondent's conduct. The court adjudicated the minor neglected and entered a dispositional order making him a ward of the court after finding respondent unfit, unable, or unwilling for reasons other than financial circumstances alone to care for, protect, train, or discipline the minor. The minor was placed in a traditional foster home with two half-siblings. As of September 2023, respondent remained incarcerated at the Winnebago County jail on charges unrelated to the minor.

¶ 8        In August 2024, the State filed a petition for termination of parental rights, alleging respondent was unfit under sections 1(D)(b), (m)(i), and (m)(ii) of the Adoption Act (750 ILCS

50/1(D)(b), (m)(i), (m)(ii) (West 2024)) for failing to (1) maintain a reasonable degree of interest, concern, or responsibility as to B.S.'s welfare; (2) make reasonable efforts to correct the conditions that were the basis for the removal of B.S. during a nine-month period after the adjudication of neglect, namely, November 5, 2023, to August 5, 2024; and (3) make reasonable progress toward the return of B.S. to respondent's care during a nine-month period after the adjudication of neglect, namely November 5, 2023, to August 5, 2024.

¶ 9        On September 6, 2024, respondent was transferred from the Winnebago County jail to Stateville Correctional Center, with a projected parole date of November 21, 2031. On November 1, 2024, at a hearing scheduled for the fitness portion of the termination proceedings, the trial court noted respondent was in the process of being transferred to Illinois River Correctional Center, so he was unable to attend. The court continued the hearing.

¶ 10       On January 23, 2025, the trial court held the first session of the fitness hearing. The court began by taking judicial notice of the neglect petition, the order of continuance under supervision, the temporary custody order, the petition to revoke continuance under supervision, the order of adjudication, the dispositional order, the August 5, 2024, permanency review order, and the petition for termination of parental rights. The State introduced 15 exhibits, for which the parties agreed to the foundation. According to respondent's brief, those exhibits are not relevant to this appeal. Due to illness, the court continued the hearing.

¶ 11       On March 5, 2025, the trial court held the next session of the fitness hearing. Due to another illness, the court again continued the hearing.

¶ 12       On May 1, 2025, the trial court held the next session of the fitness hearing. The mother executed a consent to adopt for the minor. Respondent's counsel indicated respondent was not receiving "any sort of communication" with B.S. and requested the same. The caseworker

advised it was the policy of the Illinois Department of Children and Family Services (DCFS) that once a minor was the subject of a termination petition, communication would only occur once a month and that, since B.S. had "never spoken or seen his father that it's in his best interests not to." The court decided not to modify the order that visits were at DCFS's discretion but allowed respondent leave to file a motion to address the issue. The court continued the hearing.

¶ 13        On June 11, 2025, the trial court held the next session of the fitness hearing. At respondent's request, the court continued the hearing.

¶ 14        On August 22, 2025, the trial court held the next session of the fitness hearing. Caseworker Jennifer Downey testified she was assigned to the case on July 1, 2023. She stated she was scheduled to meet with respondent every month beginning in August 2023 at the Winnebago County jail. They met a "couple times, and then after that, he refused to see [her]." After he was transferred to the Illinois Department of Corrections (DOC), which she believed was in November 2024, the goal of the case soon changed to substitute care pending termination, so she had not met with him since that time. She believed he attended the administrative case review in July 2025. Respondent was required to participate in parenting classes, a drug evaluation and any recommended treatment, a mental health evaluation and any recommended treatment, and parent coaching. To her knowledge, the facility in which respondent was housed did not have any services available. She stated respondent initially wanted to engage in services. He read a book about parenting and mailed her a written review in "early fall of 2023." Since that time, he had not reached out to request services or inquire about B.S., even though Downey had asked him to do research on parenting and how domestic violence affects children. She gave him these tasks knowing it was difficult, if not impossible, to participate in the recommended services while incarcerated. Visitation with B.S. was never implemented.

¶ 15 Downey testified DCFS had concerns relating to respondent's ability to safely parent since he was incarcerated for committing a violent offense. He also had reportedly engaged in domestic violence with the mother. He also had not participated in any recommended services. B.S. has had no relationship with respondent.

¶ 16 Respondent testified he was currently incarcerated at Illinois River Correctional Center. He had been in custody with DOC since October 2024. He admitted refusing to meet with Downey because he was "fighting" his criminal case and had to meet with his lawyer, who was sometimes scheduled on the same day as Downey's visits. He denied refusing to see her on other scheduled days.

¶ 17 Respondent said he took an anger management class, drug classes, and a mental health class while at the Winnebago County jail. While in prison, he took a "job partnership," which meant he could not get in to other classes because he was working. He recalled being diagnosed with "intermittent explosive disorder" in 2016. He said his projected parole date was November 21, 2031.

¶ 18 The trial court found the State had proved respondent unfit by clear and convincing evidence based on respondent's failure to (1) maintain a reasonable degree of interest, concern, or responsibility as to B.S.'s welfare, (2) make reasonable efforts to correct the conditions that were the basis for the removal of B.S. during a nine-month period after the adjudication of neglect, and (3) make reasonable progress toward the return of B.S. to respondent's care during a nine-month period after the adjudication of neglect. The court found Downey's testimony credible, very consistent, and unrefuted. Respondent corroborated Downey's testimony he refused to meet her for a significant period of time (from November 2023 to April 2024) to discuss B.S.'s well-being and welfare. The court noted Downey did not give up on him but continued to try to engage with

him. However, "[h]e chose not to do so." The court found no evidence that respondent "reached out proactively to inquire how his child was doing. No conversations about his health, his welfare, his safety, his security. [B.S.] is now six years of age and attending school. No questions about kindergarten or other needs that this child has. He took zero interest in his son." The court further noted respondent's testimony indicated he was preoccupied, and his priority was his criminal case. Respondent had been in custody since July 2022. His actions had led to his incarceration, which impacted his ability to have a relationship with his son and to address the issues of parenting his child. The court stated respondent had the ability to communicate with Downey about his son but chose not to do so.

¶ 19    The trial court immediately proceeded to a best-interest hearing and, after considering the testimony, arguments of counsel, and the statutory best-interest factors, at a continued hearing on September 29, 2025, found the best interest of B.S. would be served by terminating respondent's parental rights. Because respondent does not challenge the court's best-interest finding, we will not review the evidence presented.

¶ 20    On September 29, 2025, the trial court entered an order terminating respondent's parental rights to B.S., after finding him unfit as alleged in the three counts of the State's petition and after finding termination to be in the minor's best interest.

¶ 21    This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, respondent argues the trial court erred in finding the State proved him unfit by clear and convincing evidence. He argues the evidence offered by the State was insufficient to meet its burden. We disagree.

¶ 24    Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West

2024)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence that the parent is "unfit," as defined in the Adoption Act. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 25 A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make because its "opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21. A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.* "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003).

¶ 26 Here, the trial court found respondent unfit on all three grounds alleged in the State's petition. Among those was the allegation that respondent was unfit due to his failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b) (West 2024).

¶ 27 Unlike reasonable progress or efforts, the trial court is not limited to a specific time frame in evaluating unfitness on this ground. *In re M.J.*, 314 Ill. App. 3d 649, 656 (2000). "The parent may be found unfit for failing to maintain either interest, or concern, or responsibility; proof of all three is not required." *In re Richard H.*, 376 Ill. App. 3d 162, 166 (2007). "[A] parent is not fit merely because [he] has demonstrated some interest or affection towards [his] child"; rather,

his "interest, concern, or responsibility must be reasonable." (Internal quotation marks omitted.) *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005) (citing *In re E.O.*, 311 Ill. App. 3d 720, 727 (2000)). In assessing whether a parent has demonstrated a reasonable degree of interest, concern, or responsibility for a child's welfare, the reviewing court should consider indicators of engagement, such as the parent's efforts to visit and maintain contact with the child and inquiries into the child's well-being. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 72.

¶ 28        The trial court specifically found Downey's testimony credible, consistent, and unrefuted. The testimony demonstrated respondent refused to meet with Downey and failed to inquire about B.S.'s well-being. He did not inquire about B.S.'s health, welfare, safety, development, school, behavior, or overall status. Respondent admittedly stated his criminal case took priority over this case in terms of his efforts and communication. His participation in reading one parenting book and writing an essay on what he had read does not demonstrate reasonable interest, concern, or responsibility for B.S.'s welfare. The evidence suggested respondent had several opportunities to demonstrate a reasonable level of interest when Downey suggested he research what was required for sufficient parenting skills or how domestic violence affects children. He chose not to do so.

¶ 29        Respondent argues the trial court relied on his incarceration as support for finding him unfit under this ground. However, the record does not support his contention. As stated, the court clearly found respondent's lack of interest, concern, or responsibility as to B.S.'s welfare had nothing to do with his limitations due to being incarcerated. He had every opportunity to demonstrate his desire to work toward having a relationship with B.S., but he consciously and voluntarily decided not to do so. This lack of interest was not a byproduct of incarceration. Rather, as the court found, it was a willful decision. Accordingly, the court's determination respondent

failed to maintain a reasonable degree of interest, concern, or responsibility as to B.S.'s welfare was not against the manifest weight of the evidence. Because the grounds for unfitness are independent, the court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds. *H.D.*, 343 Ill. App. 3d at 493.

¶ 30                                    III. CONCLUSION

¶ 31          For the reasons stated, we affirm the trial court's judgment.

¶ 32          Affirmed.